[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STATE'S MOTION TO TRANSFER TO REGULAR CRIMINAL DOCKET
In this proceeding the court must decide whether the case of Barry G. should be transferred to the regular criminal docket pursuant to General statutes 46b-127. That statute reads in pertinent part as follows: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged."
A petition of alleged delinquency with four counts, dated March 2, 1992, was presented before Judge John Downey that day for a preliminary probable cause determination. Judge Downey did find probable cause. The state's advocate, then on March 13, 1992, filed a motion to transfer based on Count 1, of the delinquency petition, which charges "Violation of C.G.S. 53A-54A (MURDER) S.J.O.: In that on or about 3/1/92, he [Barry G.] did intentionally cause the death of another in New Haven."
A hearing was conducted on June 3 and 4, 1992, at which hearing witnesses[1] testified and documentary evidence[2] was presented. At the hearing, the state was represented by the Advocate, Attorney Karen Hardy-Massaro, and Barry was with his CT Page 7039 mother, Mrs. T., and represented by Attorney Christine Perra, a special public defender.
The State presented its case and the court did allow the presentation of the respondent's offer of proof.
 I
From the testimonial and documentary evidence, the court finds that the following facts were established.
 A
The victim, Melvin McCoy, was shot and died from a gun shot wound of the head on March 1, 1992. (State's Exhs. 2 and 3). Barry G. was born in the city of New Haven, Connecticut, on May 17, 1976. (State's Exh. 1). Barry G., therefore, was fifteen years old on the date when the crime charged against him was committed.
During the early hours of March 1, 1992, victim McCoy and Germaine Young were driving around "looking for girls" in a 1980 blue Peugot 505. [Tr. June 3, 1992, p. 57; state's Exh. 4]. The victim was driving and Young was the front seat passenger. Between 12:50 and 1:00 a.m., they stopped at a store on the corner of White street and Congress Avenue. [Tr. June 3, 1992, pp. 58, 59]. They both went into the store and Young bought his purchases first and the victim was behind. [Tr. June 3, 1992, p. 59]. As young was going out the door two minutes later, he saw Barry G., Lamont Green and Mike coming in the store. [Tr. June 3, 1992, p. 60].
There was a dispute between the victim and Barry G. "over a girl". They were "like kind of enemies". [Tr. June 3, 1990, p. 63]. Each one of them wanted that girl and would argue over her. [Tr. June 3, 1992, p. 61]. The girl, Mary Streeter (sic), was the mother of the victim's three year old baby. [Tr. June 3, 1992, p. 62]. She was also over Barry's house a lot and he used to go to her house. [Tr. June 3, 1992, p. 61]. The victim did not like Barry. [Tr. June 3, 1992, p. 63].
After Barry G., Lamont and Mike walked into the store, Young turned around and walked back in behind them to help McCoy because he thought they were going to jump the victim. Young saw Barry and the victim "stare at each other" for like "forty seconds", in like an "evil way." [Tr. June 3, 1992, pp. 65, 67]. No words were exchanged. [Tr. June 3, 1992, p. 65]. Young testified that he remembered the clothing Barry had on because he kept his eye on him all the time since he knew of the dispute between Barry and the victim. He said Barry was walking around CT Page 7040 in the store the entire time with one hand in his pocket and the other hand out. [Tr. June 3, 1992, pp. 66-67]. Barry was wearing a green camouflage army jacket and black Jamaican hat. [Tr. June 3, 1992, p. 65].
After the victim paid for his purchases, Young and he left the store and went to their car parked on Congress Avenue near the corner of White street and facing in an easterly direction towards Kossuth Street. [Tr. June 3, 1992, pp. 68-69]. The victim got in on the driver's side. Young got near the passenger's side door and, then, about a minute later, saw Barry, Lamont and Mike come out of the store and walk first in front of a car parked immediately in front of the victim's car and then across Congress Avenue to Kossuth Street. [Tr. June 3, 1992, pp. 70, 72]. Young then got into the car and the victim started to pull off and turned left down Kossuth Street. [Tr. June 3, 1992, p. 73]. The three were on the side of Kossuth street not far from the corner. [Tr. June 3, 1992, p. 73]. Young and the victim were looking at the three and Young saw Barry pull a "black piece" out, that was like a black handle of a gun. [Tr. June 3, 1392, p. 74, 80]. Young testified that he saw Barry with what appeared to be a gun. [Tr. June 3, 1992, p. 79]. Based on his observation of the "handle", he said it was an automatic .9 mm or a .45. [Tr. June 3, 1992, p. 81]. It was between 1:00 and 1:30 a.m. [Tr. June 3, 1992, p. 76]. The victim was trying to drive his car with the "stick" but it was getting, jammed up. [Tr. June 3, 1992, p. 74]. When Young saw Barry pull the "black piece" he told the victim to duck. [Tr. June 3, 1992, p. 77]. The victim was trying to get the car into second to go faster but the shooting started and his car had stalled and shut off. [Tr. June 3, 1992, p. 77]. Young did not see Barry fire because he ducked also. [Tr. June 3, 1992, p. 78]. Young did not see any guns on the other two persons. [Tr. June 3, 1992, p. 80]. Young estimated that ten to twenty shots were fired from where Barry and one of the other persons were standing, which was about six to eight feet away from from the car. [Tr. June 3, 1992, p. 83; State's Exh. 4]. He heard the shots for approximately four to six seconds in "just one steady fire." [Tr. June 3, 1992, pp. 84, 85]. From hearing guns being fired before and from hearing the sounds made by the shots that early morning, he said only one weapon was being fired. [Tr. June 3, 1992, p. 84].
After the firing stopped, Young saw Barry and Mike run back across Congress Avenue and down White Street. After the firing, the front windshield was busted; the driver's side rear window was busted up; the driver's side door window was busted; both tires on he driver's side were flattened; and there was a bullet hole on the driver's side front end. [Tr. June 3, 1992, p. 85; States Exh. 4]. There were numerous shell casings near the car: some were two to three feet away from the car and others ten to CT Page 7041 fifteen feet away from the car. [Tr. June 3, 1992, p. 39]. The caliber of the casings appeared to be around .9 mm. [Tr. June 3, 1992, p. 50]. After the firing, the victim was slumped over the steering wheel and was bleeding from a bullet wound in his head. Young then got out of the of the car and tried to start the car to take the victim to the hospital right down the street. He couldn't start the car and so he went to a lady's house and told her to call the ambulance. [Tr. June 3, 1992, p. 86].
 II
Under General statutes 53a-54(a), a person commits murder "when, with intent to cause the death of another person, he causes the death of such person or a third person." The crime of murder involves proof of two necessary factors; (1) that Barry intended to cause a death; and (2) that in accordance with that intent, he caused a death.
At this juncture, the court is dealing only with probable cause which exists if the facts found are sufficient in themselves to warrant a person of reasonable caution to believe that Barry G. has committed the crime of which he has been accused. In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. See state v. Corbuzzi, 11 Conn. 371, 376 (1971), cert. denied,404 U.S. 1017, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972); State v. Kaplan, 20 Conn. App. 183, 186 (1989). Intent can, of course, be established circumstantially. State v. DeForge, 194, Conn. 392, 399 (1984). More often than not, a party's intention is inferred from his or her statements and actions. State v. Smith,198 Conn. 147, 154, 155 (1985).
From the findings of fact, the court concludes that Barry G. fired a gun and that prior to and when he did, he had the intent to murder. Furthermore from the findings of fact, the court concludes that there is probable cause that Barry G. intentionally caused the death of Melvin McCoy on March 1, 1992.
 III.
Accordingly, the matter of Barry G. is transferred to the regular criminal docket as required by General statutes 46b-127.
Clarine Nardi Riddle, Judge